DOLLY W. CROZIER, Impleaded, etc., Appellant, *v.* CYRUS BRAY et al., Respondents.

When a will and codicil are plainly inconsistent, the latter must control, to the extent necessary to give it full effect.

Where a predominant purpose is apparent in a will, but a doubt arises as to the method devised to effect that purpose, the doubt will be so resolved as to accomplish the purpose, by presuming the testator intended a legal, not an illegal method.

The will of W., after giving his personal property to his wife "forever," gave his farm to his wife and two daughters, T. and H., "to occupy and dispose of as they may deem proper," with these provisos: that

his wife and T. "have a comfortable home in the house, together with all the fuel, fruit and proceeds of the farm to which they will be entitled as joint owners," and that if H. should die without leaving a child, her share "to be equally shared by" his wife and T. The devise was made subject to certain legacies, which the testator directed his executors to pay "at or before the expiration of four years" after his death and that of his wife. A codicil, which the testator declared therein was "to be taken as part" of his will, contained this provision: "I, therefore, will and direct that all that may remain of the property of my wife,  *  *  *  both real and personal, at her decease, be made over to and become the property of Cyrus Bray." His wife died before the testator; she had no separate property. In an action of ejectment brought by the heirs at law against Bray to recover possession of the real estate, *held*, that the words "all that may remain of the property of my wife," should be construed as meaning all that might remain of the property the testator had provided for her use; that he either construed the will as giving her a life estate, with power to sell, or intended by it and the gift over in the codicil, to effect that result; and that, upon the death of the testator, Bray took one-third of the real estate.

Reported below, 39 Hun, 121.

(Argued April 15, 1890; decided June 3, 1890.)

APPEAL from a judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made the first Tuesday of January, 1886, which denied a motion for a new trial and directed judgment for the defendants upon a verdict.

This was an action of ejectment to recover the possession of an undivided interest in about 180 acres of land situate in the county of Ontario.

The land formerly belonged to one Luther Whitney, who died, seized thereof, on the 19th of May, 1878, leaving a last will and testament, dated February 13, 1864, and a codicil thereto, dated March 19, 1872. The following are the material portions of said will:

"After paying my funeral charges and lawful debts, I give and bequeath to my beloved wife, Hannah L., all personal property, such as horses, cattle, sheep, swine, poultry, farming tools, grain, hay, books and household furniture, forever. I give and devise to my wife and my two daughters, Tasey and Harriet P., in common, all my land or real estate, to occupy

and dispose of as they may think proper, provided that my wife and daughter Tasey have a comfortable home in the house, together with all the fuel, fruit and other proceeds of the farm to which they will be entitled as joint owners; provided further, that should my daughter Harriet P. die without leaving a child or children, her share of my estate be equally shared by my wife and daughter Tasey.

"Further, the land is devised as above, subject to the following legacies, which I direct my executors, hereinafter named, to pay at or before the expiration of four years after the death of myself and wife, but without interest: I give and bequeath to my daughter Cornelia one thousand dollars; but in case of her death without leaving a child or children, I will it to my wife and two daughters, Tasey and Harriet P., unless Harriet P. should die without leaving a child or children, in which case I direct my executors to pay it to my wife and daughter Tasey."

The rest of the will provided for the erection of a tombstone, and named the executors.

The codicil, aside from a clause nominating a new executor in the place of the one who had died, is in these words: "Whereas, I, Luther Whitney, in Seneca, of the county of Ontario and state of New York, have made my last will and testament, in writing, bearing date the 13th day of February, A. D., 1864, now, I do, by this, my writing, which I hereby declare to be a codicil to my said will, and to be taken as a part thereof:

"I, therefore, will and direct that all that may remain of the property of my wife Hannah L., both real and personal, at her decease, be made over to and become the property of Cyrus Bray; providing said Cyrus Bray should decease before my wife, then the property that my wife should leave at her decease shall be received by my two daughters, Tasey and Harriet P., and become their property and their heirs."

The testator, who was ninety-six years old at the time of his death, had been married twice. He left as heirs at law by his first marriage three children, George, Hannah and Dolly,

and one grandchild, the daughter of Nathan, a deceased son By his second marriage he left three daughters, Cornelia, Tasey and Harriet. Cyrus Bray married Harriet, and for many years lived with the testator and worked the farm. The second wife, Hannah L., died before the testator, and she never had any property. While five of the heirs at law united in bringing this action, only one appealed from the judgment in favor of the defendants.

*Charles S. Baker* for appellants. The real estate devised was an absolute fee, subject to the payment of the legacies specified and the personal and unqualified gift thereof. (*Helmer* v. *Shoemaker*, 22 Wend. 137, 140; *Floyd* v. *Fitcher*, 38 Barb. 409, 410–413; *Jackson* v. *Robbins*, 16 Johns. 537, 583–590; *Jackson* v. *Bell*, 10 id. 19; *Crain* v. *Wright*, 114 N. Y. 307–311; *Wright* v. *Miller*, 8 id. 9, 22; *Oxley* v. *Lane*, 35 id. 340, 348; *Roseboom* v. *Roseboom*, 81 id. 356; *Smith* v. *Van Ostrand*, 64 id. 284; *Campbell* v. *Beaumont*, 91 id. 464; *Howard* v. *Carusi*, 109 U. S. 725, 730; *Fullenwider* v. *Watson*, 14 N. E. Rep. 571; *Ide* v. *Ide*, 5 Mass. 500, 504; *Holmes* v. *Godson*, 8 DeG., M. & G., 152; *Norris* v. *Beyea*, 13 N. Y. 273, 286; *Tyson* v. *Blake*, 22 id. 558, 663; *Hughes* v. *Ellis*, 20 Beav. 193; *Greated* v. *Greated*, 26 id. 621; *Ramsdell* v. *Ramsdell*, 21 Me. 288; *Pickering* v. *Langdon*, 22 id. 413.) No estate whatever could be taken by the defendant Bray, or others, but the portion devised to the wife, Hannah L. Whitney, lapsed, and the same descended to her heirs at law, and the five-sevenths of the one-third of the whole premises belong to the plaintiffs, they being such heirs, entitled to such portion, and should have had a judgment for the recovery of the possession thereof. The attempted qualification, or devise over to Bray, was void, on the ground of repugnancy. (2 Jarman on Wills, 528, 529, 530; *Van Horne* v. *Campbell*, 100 N. Y. 287; *Helmer* v. *Shoemaker*, 22 Wend. 137; *Floyd* v. *Fitcher*, 38 Barb. 413; *Oxley* v. *Lane*, 35 N. Y. 340, 348; *Norris* v. *Beyea*, 13 id. 273, 286; *Tyson* v. *Blake*, 22 id. 558, 563;

*Wright* v. *Miller*, 8 id. 9, 22–25; *Campbell* v. *Beaumont*, 91 id. 464; *Thornhill* v. *Hall*, 2 C. & F. 22; *Clark* v. *Leupp*, 88 id. 228, 231, 232, 233; *Howard* v. *Caraski*, 109 U. S. 725, 730; *Ide* v. *Ide*, 5 Mass. 500; *Fullenwider* v. *Watson*, 14 N. E. Rep. 371; *Ramsdell* v. *Ramsdell*, 21 Me. 288; *Pickering* v. *Lane*, 22 id. 413; *Pinckney* v. *Pinckney*, 1 Bradf. 269; *Cohen* v. *Cohen*, 4 Redf. 48, 49, 50; *Byrnes* v. *Stilwell*, 103 N. Y. 460; *Leggett* v. *Firth*, 53 Hun, 152; *Greyston* v. *Clark*, 41 id. 125; *Van Winkle* v. *Constantine*, 10 N. Y. 422; *Brennan* v. *Mayor, etc.*, 47 How. Pr. 176; Jones on Bailments, 46; *Buckle* v. *Mitchell*, 18 Ves. 100; 3 R. S. [5th ed.] 12, 13, §§ 25, 34; *Hollis* v. *Hollis*, 99 N. Y. 505, 512, 514; *Taggart* v. *Murray*, 53 id. 237, 238; *In re Cager*, 111 id. 343, 349; *McLean* v. *Freeman*, 70 id. 181; *Wager* v. *Wager*, 96 id. 163; *Doaning* v. *Marshall*, 28 id. 366; *Lean* v. *Freeman*, 70 id. 81; *Wyth* v. *Blackburn*, 1 Ves. 197, 202; 4 Kent's Comm. 273; *Hughes* v. *Ellis*, 20 Beav. 193; *Greated* v. *Greated*, 26 id. 621.)

*Edwin Hicks* for respondents. The will and the codicil are to be taken in their several parts and read and construed together as one instrument. (*Lynch* v. *Pendergast*, 67 Barb. 501; *Westcott* v. *Cady*, 5 Johns. 334; 6 Peters, 68; 5 Paige, 318; *Ritch* v. *Hauxhurst*, 114 N. Y. 515; *Lyttle* v. *Brandage*, 58 id. 592; *Hoppock* v. *Tucker*, 59 id. 202; *Phillips* v. *Davis*, 92 id. 199; *Wager* v. *Wager*, 96 id. 167.) The evident intention of the testator, by a fair construction of the will and codicil, was that Hannah L., his wife, should take a life estate in one-third of his real estate, with remainder over to his son-in-law, Cyrus Bray. (*Humphrey* v. *Humphrey*, 3 Barb. 385; *Kerr* v. *Bryan*, 32 Hun, 51; *Livingston* v. *Green*, 52 N.Y. 118; *Kelly* v. *Kelly*, 61 id. 47; *Crossman* v. *Field*, 119 Mass. 170.) The two provisions are not void for repugnance. (*Taggert* v. *Murray*, 53 N. Y. 246; *Chrystie* v. *Phyfe*, 19 id. 384; *Norris* v. *Beyea*, 13 id. 284; *Terry* v. *Wiggins*, 47 id. 518; *Bell* v. *Warn*, 6 T. & C. 601; 1 R. S. 725, §§ 32, 33, 81–83, 732; *Smith* v. *Bell*, 6 Pet. 68; *Colt* v.

*Heard*, 10 Hun, 189; *Wager* v. *Wager*, 96 N. Y. 164; *McLean* v. *Freeman*, 70 id. 81 ; *Downing* v. *Marshall*, 23 id. 366 ; *Van Horne* v. *Campbell*, 100 id. 328 ; *Wells* v. *Seeley*. 47 Hun, 109; *Greyston* v. *Clark*, 41 id. 125.) The wife dying in the lifetime of the testator, the estate never vested in her, and upon the death of the testator, the remainder over to Cyrus Bray took effect. (1 R. S. 722, 725, §§ 7–10, 32, 33 ; *Greyston* v. *Clark*, 41 Hun, 130.) Mrs. Whitney, the wife, died in the lifetime of the testator, and no estate to the one-third ever vested in her, and as the remainder over was not void in its creation, the estate of necessity went to Cyrus Bray, as the substituted object of the testator's bounty. (*Downing* v. *Marshall*, 23 N. Y. 366, 370 ; *McLean* v. *Freeman*, 70 id. 85 ; *Burbank* v. *Whitney*, 24 Pick. 146 ; *Mowatt* v. *Carow*, 7 Paige, 328, 336.)

VANN, J. The appellant claims that the will gave an estate in fee to the wife, Hannah L. ; that the devise over to Cyrus Bray by the codicil is void on the ground of repugnancy, and that by the death of Hannah L. before her husband, the portion devised to her lapsed, and as there was no residuary clause, descended to the heirs at law of the testator. The respondents claim that the will and codicil, when construed together, show that it was the intention of the testator that his wife should take a life estate only, with the remainder over to Cyrus Bray. The position of each is not without the support both of reason and authority, and it is not surprising that the learned judges of the General Term did not unite in pronouncing judgment. While no construction can be given to the will and codicil that will satisfy all fair minds qualified to judge upon the subject, we will endeavor, by a careful analysis of the language used by the testator, to ascertain what he meant to do, and then give effect to his intention to the utmost extent permitted by well settled rules of law.

By attaching the word "forever" to the gift of the personal property, and by the omission to use that or any word of equivalent meaning to the gift of the realty, the testator may

have intended to discriminate between the two gifts by making the one permanent and the other temporary. The intention to so discriminate is strengthened by the use of the word "occupy" in connection with the devise of the real estate, but it is weakened by the provision that the devisees may "dispose of" the same "as they may think proper." Two provisos follow in direct connection, qualifying or limiting the gift. By the first the testator directs that his wife and his daughter Tasey shall have a comfortable home in the house. This operates as a limitation upon the gift to Harriet, so far as the house is concerned, by making it subject to the right of the other two devisees to have a home therein. Such limitation is obviously confined to the lifetime of the wife and Tasey, or to the period during which they would need or could use the house for a home. The remainder of the clause, to wit: "Together with all the fuel, fruit and other proceeds of the farm to which they will be entitled as joint owners," may be a part of the proviso or a part of the gift. If it is a part of the proviso it does not appear to add to or take from the portion of any devisee, as the word "they," in that case, would refer to the wife and Tasey, and the phrase would simply confirm the previous gift to them. If it is a part of the gift itself, the word "they" refers to the three devisees, and while the effect would be a confirmation of the previous gift in part, by naming the products of the farm it would also suggest that such gift was intended to be a life estate. The term "joint owners" may refer to the devisees in either capacity, as joint owners of the fee or of an estate for life. By the second proviso the testator directed that in case Harriet should die without leaving any children, her portion of the estate should be equally shared by the other two devisees. If the reference to Harriet's share is for convenience of description merely, it throws but little light upon the main question; otherwise it would indicate that her share was a fee that he desired to make contingent upon her death without living issue.

The land was devised "as above" subject to the payment of certain legacies "at or before the expiration of four years

after the death of" both the testator and his wife, but without interest. He evidently intended by this clause to provide for ease in the payment of the legacies. While the devisees were not directed to pay them, the devise was subject to the payment thereof by the executors, who, for this purpose, were doubtless trustees. As there is nothing in the will indicating an intention to give a life estate to the wife, unless it was also the intention to give a life estate to each of the other devisees, and as the legacies were not payable until after the death of the wife, it follows that unless the devise was of the fee, her share of the devise was practically freed from any share in the payment of the legacies. Moreover, if the wife had happened to be the last survivor of the three, it is difficult to see how payment of the legacies could have been enforced at all unless the testator intended to give the land in fee. This clause, therefore, tends to support the contention that the devise was absolute.

The remaining clause of the will has no bearing upon the question presented for decision, except that the gift over to the wife, Tasey and Harriet of the bequest to Cornelia in case of her death without issue surviving, and in the event of Harriet's death, also without issue, to the wife and Tasey, when the legacy was not payable until after the death of the wife, indicates a want of clearness of perception on the part of the testator and prepares one who studies his will to encounter inconsistencies.

The codicil is expressly made a part of the will and shows a change of intention with reference to the gift to the wife. As she had no property, the expression " all that may remain of the property of my wife " evidently refers to that given her by the will. If the reference to it is as to property vested in her under the provisions of the will, as in *Van Horne* v. *Campbell* (100 N. Y. 287), the attempted gift over of that belonging to another would be void for repugnancy according to all the authorities. But, if it is referred to as the property of the testator and thus mentioned for convenience of description, as in *Norris* v. *Beyea* (13 N. Y. 273, 275), the gift would

include that only which belonged to himself and would indicate one of two results; either a practical construction of the will as giving to his wife a life estate in the real, and the use during life of the personal property, or an intent to cut down the previous gift to her by limiting it in this manner. The expression " all that may remain " as applied to the personal property would thus refer to that which had not been used up and as applied to the realty to that which had not been sold by the wife under the power of sale indicated by the words " dispose of " in the will and " all that may remain " in the codicil. ( *Wager* v. *Wager*, 96 N. Y. 164, 170.) By a proviso, which follows immediately, he refers to the property that his " wife should leave at her decease," but whether he alludes to it as property that would then belong to his wife, or to that which he had not yet disposed of, is open to the same doubt as the former expression of similar import.

What did the testator mean by the will and codicil, taken together? For the purpose of construction they should be regarded as one instrument, except that the making of the codicil eight years after the execution of the will emphasizes the change of intention. ( *Westcott* v. *Cady*, 5 Johns. Ch. 334; *Willet* v. *Sandford*, 1 Vesey, Sr., 186; Shouler on Wills, §§ 468, 487; 2 Jarm. on Wills [5th ed.], 840.) We think that he intended to give his wife all that she wanted to use of the personal property and all that she wanted to use of one-third of the real property, and upon her death the unused remainder of both to Cyrus Bray. His intention, as we gather it from his language, is the same as if he had said, " I give all my personal property to my wife, and all my real estate to her and my daughters, Tasey and Harriet, to occupy and dispose of as they may think proper, but so much of my wife's part as may be left at her death, I give to Cyrus Bray." Clearly, he did not intend to die intestate as to the portion in question, or that any third person should come in between his wife and Mr. Bray and take any part thereof. He intended to give that part wholly to these two persons and to no one else. If others are allowed to share in it, it will be contrary to his

purpose as expressed in the will. Such being his intention, can effect be given to it? It is not so difficult to ascertain the substance of his desire as it is to discover the method by which he intended to accomplish it. If he intended to give one-third of the real estate to his wife absolutely and upon her death the whole or a part of the same property to Mr. Bray, he undertook an impossibility and the attempt must be held abortive, as the latter gift would be contradictory of the former and void. But a will should not be so read as to contradict itself if any other reasonable interpretation is possible. If it is capable of two constructions, one consistent and the other inconsistent with the law, the former will be preferred, as it is presumed that the testator intended to comply with the law. If a will and codicil are plainly inconsistent, the latter must control to the extent necessary to give it full effect, . as the presumption in such a case is much stronger than in the case of a later clause in the same instrument. While a clear gift cannot be cut down by a doubtful expression, still where a predominant purpose is apparent, but a doubt arises as to the method devised to effect that purpose, such a doubt should be so resolved as to accomplish the object of the testator by presuming that he intended a legal and not an illegal method.

Applying these rules of interpretation, which are elementary, to the will and codicil in question, and bearing in mind that intention is the absolute criterion of construction as applied to wills, we are led to the conclusion, although with hesitation and difficulty, that the testator meant by "all that may remain of the property of my wife" all that might remain of the property that he had provided for her use; that he did not mean to give to Bray property belonging to his wife, but property belonging to himself, and that he either construed the will as giving her a life estate, or intended by the expression under consideration in connection with the gift over to Bray to effect that result. Otherwise the codicil, expressing his after-thought and latest intention, must go for nought, and that which he intended to give to Bray go to

those to whom he intended to give nothing. While the language employed is not such as would be chosen by an experienced lawyer either to limit an estate or to allude to one as already limited, an inaccurate use of words cannot be allowed to defeat the manifest intention to give to Bray what was left upon the wife's death. What could be left for him if all had been given to another? Yet something was intended to be left, either by withdrawing a part that had been given to the wife, or by construing the gift to her as not constituting a fee. If he had said, "Whereas, by my will I gave a life estate to my wife with power to sell, now by this codicil I give that which may remain upon her decease to Cyrus Bray," his meaning would have been plain. While in the codicil, as written, he did not expressly characterize the gift to his wife, we think that he did so impliedly and treated it as a life estate by giving away the remainder. Moreover, the expression "all that may remain" by fair implication indicates that he intended that something should be left which he had not given to his wife, and hence could give to another. By fixing upon the death of his wife as the contingency when the gift to Bray should take effect, he also pointed out the nature of the provision for her, as he understood it. In fine, unless we mock the aged testator by reading his words as meaningless or unlawful, we must conclude that by the will and codicil together, he intended to give a life estate to his wife with power to sell and, upon her death, the remainder to Mr. Bray.

We regard this conclusion as sustained by the weight of authority, but it must be conceded that the decisions are not uniform. The cases are so numerous and the language and schemes of the wills considered therein so varied as to produce confusion. It is believed, however, that they all unite in the effort to give the greatest possible scope to the dying owner's wishes, and that an apparent conflict arises from bending his words in one part of the instrument so that they will fit those used in another part, in order to accomplish this result. When the intent is ascertained, it is almost blindly followed.

In *Taggart* v. *Murray* (53 N. Y. 233, 236), the court said : "But in the construction of wills   *   *   *   the intention is to be ascertained by the consideration of the whole instrument, and the construction is not to be made upon a single or isolated clause detached from its relation to those with which it is associated.   If, on a comparison of the different provisions of a will, it is found to contain dispositions which are repugnant to each other, then it is the office of judicial interpretation to preserve, if consistent with the rules of law, the paramount intention of the testator as disclosed by the instrument, although in doing so it may defeat his purpose in some subordinate and less essential particular.   It is, however, a primary rule in the construction of wills that effect is to be given, if possible, to all of its provisions, and no clause is to be rejected, and no interest intended to be given is to be sacrificed on the ground of repugnancy when it is possible to reconcile the provisions which are supposed to be in conflict.   In accordance with this rule, it is held that subsequent clauses in a will are not incompatible with or repugnant to prior clauses in the same instrument, where they may take effect as qualifications of the latter, without defeating the intention of the testator in making the prior gift."   Among the authorities cited in support of the language quoted is *Norris* v. *Beyea* (13 N. Y. 280, 284), from which the following extract is taken : " But there is in truth no repugnancy in a general bequest or devise to one person in language which would ordinarily convey the whole estate, and a subsequent provision that upon a contingent event, the estate thus given should be diverted and go over to another person.   The latter clause in such cases limits and controls the former, and when they are read together it is apparent that the general terms which ordinarily convey the whole property are to be understood in a qualified and not an absolute sense."

In *Terry* v. *Wiggins* (47 N. Y. 512), the testator, after devising to his wife a piece of real estate " for her sole and absolute use and disposal," devised to her all his other real and personal estate " for her own personal and independent use

and maintenance, with full power to sell or otherwise dispose of the same in part or in whole, if she should require it or deem it expedient to do so," and after her decease "whatever residue there may be of personal or real estate" he gave to a religious society; it was held that by the second devise to the wife she took a life estate only with a conditional power of disposal annexed, which did not operate to enlarge the estate to a fee, and that the limitation over was not repugnant, but valid. The decision rested upon the general scheme of the will and the language was so construed as to reconcile the different provisions and give effect to every part of the testator's purpose.

In *Wager* v. *Wager* (96 N. Y. 164), the testator, after a bequest to his wife, devised and bequeathed to his daughter, Susie, all the remainder of his real and personal estate, but directed that if Susie should die before his wife, "all the property, both real and personal, that shall be left by my daughter at her death" should go to his wife. The wife survived the testator and he survived his daughter. It was held that the gift to the wife in case she survived the daughter was not dependent upon the taking effect of the primary gift to the daughter; that while the language employed in making the latter gift would generally import an absolute estate, yet as such a construction would render inoperative the limitation over and would defeat the manifest intent of the testator, it was the duty of the court to so construe as to render the whole will operative and to effectuate the intent, and that the widow was entitled to the whole estate.

Referring to the claim that the provision for a remainder to the wife was void for repugnancy, the court said: "There are no words of inheritance or express language used in the bequest indicating an intention to give an absolute estate to the daughter, and such an intention is inferrable only from the language used in constituting the remainder for the wife, which, by describing it as that part of the devised property to be left by the daughter at her death, leaves it to be implied that the power of disposing of it during her life was intended

to be given to her.   \*   \*   \*   The language of the provision under consideration expressly gives the property therein described to the wife solely upon the contingency of the death of the daughter, whenever that might occur, and we think that there is no language used in the will indicating an intention on the part of the testator to make this devise in any way dependent upon the taking effect of the first devise. The entire contention of the plaintiff is based upon an inference sought to be drawn from language used simply by way of description, and the attempt is thus made to· destroy an estate, by an inconclusive inference, which the express language of the will attempted to create.   \*   \*   \*   The controlling force which has always been given to the intent of the testator, as ascertainable from the general scope and tenor of the instrument, require us to ascribe   \*   \*   \*   inexactitude of expression, rather than such a meaning as will defeat his intent. We are of the opinion that, although the language employed in making the devise to the daughter would generally import an absolute estate in the property, yet that the creation of a limitation over, clearly intended to deny her the power of disposing of it by will, and the force of the testator's intention, as derived from the provision for a remainder in the wife, and the scope and design of its provisions generally, fairly imply an intention on his part to confer a life estate only upon the daughter."

Much more of this opinion might be repeated as applicable to the case under consideration, including the comments upon *Campbell* v. *Beaumont* (91 N. Y. 464). Out of the multitude of authorities that might be cited as applicable, we shall particularly refer to but one more, *Smith* v. *Bell* (6 Pet. 68), in which the opinion of the court was prepared by Chief Justice MARSHALL. In that case, after a specific bequest, the testator gave to his wife all of his " estate whatsoever and wheresoever and of what nature, kind and quality soever   \*   \*   \*   for her own use and benefit and disposal absolutely ; the remainder of said estate, after her decease, to be for the use of " his son. The court said : " The first and great rule in the exposi-

tion of wills, to which all other rules must bend, is that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law. \* \* \* These words (referring to the gift over to the son) give the remainder of the estate, after his wife's decease, to the son with as much clearness as the preceding words give the whole estate to the wife. They manifest the intention of the testator to make a future provision for his son as clearly as the first part of the bequest manifests his intention to make an imme- diate provision for his wife. If the first bequest is to take effect according to the obvious import of the words taken alone, the last is expunged from the will. The operation of the whole clause will be precisely the same as if the last mem- ber of the sentence were stricken out, yet both clauses are equally the words of the testator, are equally binding and equally claim the attention of those who may construe the will. \* \* \* The limitation in remainder shows that, in the opinion of the testator, the previous words had given only an estate for life. This was the sense in which he used them. \* \* \* But suppose the testator had added the words ' dur- ing her life.' These words would have restrained those which preceded them. \* \* \* If this would be true provided the restraining words ' for her life' had been added, why may not other equivalent words, others which equally manifest the intent to restrain the estate of the wife to her life, be allowed the same operation. The words ' the remainder of said estate, after her decease, to be for the use of the said Jesse Goodwin' are, we think, equivalent. They manifest with equal clearness the intent to limit the estate given to her, to her life, and ought to have the same effect. They are totally inconsistent with an estate in the wife, which is to endure beyond her life." See also *Colt* v. *Heard* (10 Hun, 189); *Greyston* v. *Clark* (41 id. 125); *Wells* v. *Seeley* (47 id. 109); *Leggett* v. *Firth* (53 id. 152).

The most, if not all, of the cases relied upon by the plain- tiff differ from that at bar in one or more of three particulars: 1. There was no specific gift over of the primary devise.

2. The gift over was by a later clause in the same instrument, if not in the same sentence. 3. The intent of the testator was not clear.

We think that the judgment should be affirmed, with costs. All concur, except BRADLEY and HAIGHT, JJ., not sitting. Judgment affirmed.