FRED H. MEAD, Individually and as Administrator of ABIGAIL D. MEAD, Deceased, Appellant, v. WILBER D. MABEN and Others, Respondents.

*Wills — absolute devises to several persons with a provision over to the survivors upon the death of any one without issue — the death intended is one occurring before that of the testator.*

The general rule of construction of wills is that in the case of devises to one or more persons absolutely, followed by a provision that in the event of the death of any of them without issue, the same shall go to the survivors, the death referred to means a death in the lifetime of the testator,

The will of a testator, after giving certain specific legacies, devised the residue of the estate to his executors, who were directed to convert his real estate into personalty, and to divide all such residue, and its income before such conversion, equally among his seven children.

By the sixth clause he provided that if his daughter Diademia should die without a will her share should be equally divided among the other children; and by the seventh clause, that if his son Jonathan should die without a will his executors might give to Jonathan's children the whole or any part remaining of his share; otherwise that they divide his share equally among the testator's other children. The eighth clause was as follows: "If any of my children, except Diademia, shall die without leaving surviving child or children, or heirs of the body, then the share or portion of my estate so given to such deceased child shall go equally to my other children, but in the manner and subject to the like limitations, as the specific bequests to each of them, as has been hereinbefore provided and given."

In an action brought to obtain a construction of the will:

*Held,* that the death contemplated by the eighth clause thereof was a death occurring before that of the testator, and that this interpretation was not affected by the peculiar provisions in favor of Diademia and Jonathan contained in the sixth and seventh clauses of the will. (Learned, P. J., dissenting.)

Appeal by Fred H. Mead, individually and as administrator of Abigail D. Mead (formerly Maben), from so much of a decree made on the 12th day of June, 1890, and entered in the office of the surrogate of Greene county, as provided:

"That by the language of the eighth clause of the will of Buel Maben, deceased, he intended a death of any of his children, either before or after his death, and did not intend to limit it to a death prior to his death."

II. As finds, decides or determines that said Fred H. Mead, individually or as administrator, etc., of Abigail D. Mead, deceased,

takes no interest, and is not entitled to any, in the estate of Buel Maben, deceased.

III. As finds, decides and determines that said Fred H. Mead, either individually or as administrator aforesaid, is not entitled to any part of the net one-seventh part of said estate of Buel Maben, less the amount paid to the said Abigail D., in her lifetime, or that one-seventh part thereof did not vest absolutely and unconditionally in the said Abigail D. on the death of said testator; and

IV. From that part of said decree that orders, adjudges and decrees "that the balance of the one-seventh share of said estate given to Abigail D. by the will of said testator be distributed in equal parts, and which distributes the same to the four living children (and those deceased) of said testator, viz.: Wilber B. Maben, Alanson J. Maben, Diademia L. Maben and Fesie A. Shaver, and to Charles B. Teft, administrator, etc., of Antoinette Teft, deceased, and Charles B. Teft, executor, etc., of Jonathan A. Maben, deceased, to each of them $226.09 thereof."

This decree was made upon a final judicial settlement of the accounts of Wilber Maben and others, as executors of the last will and testament of Buel Maben, deceased.

The settlement and distribution of the estate of the deceased involved a judicial construction by the surrogate of certain provisions of the will of the testator; and by the decree the surrogate gave a construction to the will and made a distribution of the estate in accordance with such construction.

*M. B. Mattice* and *E. Countryman,* for the appellant.

*Hallock, Jennings & Chase,* for Wilber D. Maben and others, respondents.

*J. R. Allaben,* for F. A. Shaver, respondent.

*James B. Olney,* for Kate L. Maben and others, respondents.

*J. A. Griswold,* for administrators of Antoinette Teft, deceased.

MAYHAM, J.:

Buel Maben, by his will, bequeathed certain specific legacies, therein specified, to two of his children and one of his grandchildren; and by the fourth clause of that instrument gave, devised and

bequeathed all the rest, residue and remainder of his estate, real and personal, to his executors therein named, to be disposed of by them as thereafter provided in said will.

By the fifth clause of his will the testator authorized, empowered and directed his executors to sell his real estate, or any portion of the same, when they or a majority of them should deem it for the best interest of the estate, and execute deeds therefor; and in the same clause provides as follows:

"I direct my said executors to divide my estate (not before devised and bequeathed) into seven equal parts; each of my children is to have one of said parts—my sons, Wilber B., one-seventh, Jonathan A., one-seventh, Alanson J., one-seventh, my daughter Antoinette, one-seventh, except that she, Antoinette, shall be charged with six hundred dollars heretofore advanced to her; Diademia, one-seventh, Fesie S., one-seventh, Abigail D., one-seventh; and until my real estate shall be sold, the income arising from the said estate shall be paid to the several legatees and devisees hereinbefore named according to their respective or proportional interests thereof, as herein provided."

The sixth clause provides that if Diademia shall die without a will, her interest remaining shall be equally divided among his other children.

The eighth clause of the will is the one under which this controversy chiefly arises, and is as follows:

"If any of my children, except Diademia, shall die without leaving surviving child or children or heirs of the body, then the share or portion of my estate so given to such deceased child shall go equally to my other children; but in the manner and subject to the like limitation, as the specific bequests to each of them, as has been hereinbefore provided and given."

After the death of the testator his daughter Abigail married Fred H. Mead, and soon thereafter died intestate and without issue, and Fred H. Mead was duly appointed and qualified as administrator of her estate.

Jonathan A. Maben died after the testator, having made a will which has been admitted to probate, also leaving children him surviving. Antoinette Teft died after the testator, leaving children her surviving.

On the hearing before the surrogate Fred H. Mead, in person, and as administrator of his deceased wife, appeared before the surrogate

and claimed the one-seventh of the residuum of the estate as devised and bequeathed by the testator to his wife, now deceased, under the provisions of the will. This claim was resisted by the executors and other parties interested in the estate, and the surrogate thereupon adjudged and determined and ordered as follows:

"And it is further ordered, adjudged and decreed that by virtue of the provisions of said will the said Fred H. Mead, as administrator of the goods, chattels and credits of Abigial D. Mead (formerly Maben), deceased, takes no interest whatever in said estate as the said Abigial D. Mead (formerly Maben) died without leaving surviving child or children or heirs of the body."

To this finding and determination Fred H. Mead duly excepted. This ruling, decree and determination, and the exception thereto bring up the only controverted question in this case.

The question for determination on this appeal is sharply presented, and is: Did the contingency of the death of a legatee or devisee without issue refer to death before or after the death of the testator? The answer to this question is decisive of the point raised on this appeal.

If before, then the contention of the appellant is correct and the decree should be reversed; if after the death of the testator, then on the death of the appellant's intestate without issue the devise and bequest to her failed, and the seventh devised and bequeathed to her fell back into the bulk of the estate to be distributed to the surviving legatees and devisees of the testator, and the appellant, as personal representative or next of kin of his deceased wife, took no interest in the estate.

The rule seems well settled that, when a testator provides in his will that if one of his legatees or devisees die without children, the share devised to him shall go to the survivors, without anything in the will to qualify the effect of that language, the death must occur prior to that of the testator before the limitation over can attach, and on the death of the testator the title vests absolutely in the legatee or devisee.

In *Vanderzee et al.* v. *Slingerland et al.* (103 N. Y., 53), ANDREWS, J., says: "This rule applies to both real and personal estate, and, so far as I know, the authorities in this country uniformly sustain the construction, that where there is a devise or bequest

*simpliciter*, to one person, and in case of his death to another, the words refer to a death in the lifetime of the testator.

In *Quackenbos, Executor*, v. *Kingsland* (102 N. Y., 128), the testator, after certain specific devises and bequests, gave the residue of his estate to his son Daniel and his heirs; then followed these words: "But in case my son Daniel should die without lawful issue, I give and bequeath it to my remaining children, share and share alike." Daniel survived the testator, and it was held that, in the absence of other words showing a contrary intent, the death referred to was the death of the beneficiary during the life of the testator, and that upon his death Daniel took an absolute estate; and DANFORTH, J., in delivering the opinion of the court, says: "It (the will), gives the remainder of his estate to his son Daniel Kingsland and to his heirs. So far absolutely, but as this interest could not vest until his death, the testator, to provide against the consequence of a lapse, says: 'In case my son Daniel shall die without lawful issue, I give the estate to my remaining children.' These words we must hold, upon principle and authority, relate to the death of the testator, and upon that event, during the lifetime of Daniel Kingsland, Jr., the latter became vested with the residuary estate, and was entitled to its possession. This conclusion is required by the decision of the courts in many similar cases." And the court cites, in support of this conclusion, *Embury* v. *Sheldon* (68 N. Y., 227), and *Livingston* v. *Greene* (52 id., 118), to which might be added *Moore* v. *Lyons* (25 Wend., 119); *Kelly* v. *Kelly* (61 N. Y., 47), and others.

In the recent case of *Austin* v. *Oakes* (117 N. Y., 595) the court reasserts the doctrine upon this point of *Vanderzee* v. *Slingerland*, (*supra*) so that the recent authoritative declaration and reiteration of this doctrine by the Court of Appeals make further discussion or citation of authority upon that point unnecessary. The general doctrine, that a devise or bequest to one or more persons absolutely and in case of the death of the devisee or legatee without issue then such share over to the survivor or survivors, that such words of contingency refer to a death of the devisee or legatee in the lifetime of the testator, is too thoroughly established by recent and controlling authority to be ignored or unheeded by this court; and must control in this case, unless there is a clear intention manifested by the testator in his will to apply that contingency of the death of

a beneficiary without issue, to a time after as well as before the death of the testator.

The rule as above stated does not seem to be seriously attacked by the learned counsel for the respondents by a reference by them or either of them, to authorities, to overthrow the doctrine of the cases to which we have referred ; but we are referred to the harshness of the rule as applied to the facts in the case, and urged to spell out from the will an intention on the part of the testator to retain this property entirely within the control of his lineal descendants, to the extent that, under certain conditions, it would be inalienable by his legatees and devisees. It is undoubtedly the duty of the court to give effect to the intention of the testator.

But the will should not be so read as to contradict itself, and if capable of two constructions, one consistent and the other inconsistent with the law, the former will be preferred, as it is presumed the testator intended to comply with the law. (*Crozier* v. *Bray et al.*, 120 N. Y., 375.)

In the *Matter of the Application of the New York, Lacka-wanna and Western Railroad Company* (105 N. Y., 89), it was held that where there is a devise to one person absolutely, and in the case of his death to another, the contingency referred to is the death in the lifetime of the testator ; but that rule only applies where the context of the will is silent, and affords no indication of a different intention ; and where the devise over is dependent upon death without issue the tendency of the court is to lay hold of slight circumstances in the will to vary the construction and give effect to the language in its natural import ; but the intention of the testator in that case was clearly indicated in the will by a positive provision that " the devise over to my husband, sister and brothers to depend upon the contingency of my daughter Monnie dying without issue."

The daughter named survived the testatrix, and it was held that she took a conditional fee ; that her children, should she leave any, would take from her by inheritance, but a conveyance by her in her lifetime would be effectual as against them.

In *Beck* v. *Ennis* (54 Hun, 126) the contingency was in express terms made to depend not on the legatee's death before the testator, but upon the death of a brother or sister in case the legatee died

before them without issue. It is apparent that that case did not come within the rule to which we have referred, and the court so held.

In *Goerlitz* v. *Malawista* (56 Hun, 120), the contingency suggested was the death or marriage of the wife of testator, and the court held that the contingency related to the life-tenant, and not to that of the testator. It is apparent that the event upon which the estate was contingent could not arise during the life of the testator, and was, therefore, upon the face of the will, not contingent upon the death of the beneficiary before that of the testator. (*Goerlitz* v. *Malawista*, 56 Hun, 120.)

In the case at bar there is no express provision of the will from which it appears that the testator intended that the death referred to, and upon which the estate was contingent, might occur after or before that of the testator. The fact that the estate devised and bequeathed to Jonathan and Diademia depended upon the other conditions does not, we think, afford any evidence of the intent of the testator in reference to the share of Abigail to take her share out of the operation of the general rule of law applicable to devises and bequests of that character. We think the learned surrogate erred in ruling and holding, in effect, that the death of Abigail without issue after the death of the testator carried her one-seventh of the estate back into the bulk of the estate, to be distributed to the surviving legatees and devisees.

As the question as to what interest the appellant took in her share, as her personal representative and husband, has not been raised on this appeal, we do not feel called upon to consider that question. Nor do we see that the point raised by the counsel for the special guardian of Tibbie and Frank Maben was raised before the surrogate. If the return is defective, we do not see how this court can furnish relief, it should, we think, be first sought before the surrogate.

The decree must be reversed and the case remitted to the surrogate for a new trial.

LANDON, J. :

The general rule is, that in case of a devise or bequest to one or more persons absolutely, followed by a provision that in the event of the death of any one of them without issue, the same shall go to the survivors, the death referred to means a death in the lifetime

of the testator. A death subsequent to that of the testator will not be inferred unless the language or terms of the will express or suggest it. It is unnecessary to repeat the authorities cited by my Brother MAYHAM.

The question here presented is, whether the language or terms of the will suggest that the testator, by the eighth paragraph of his will, intended to make an exception to the general rule. A careful examination of the entire will leads me to conclude that he did not. By the first, second and third paragraphs of the will the testator made absolute bequests of his household furniture, a musical instrument and also two pecuniary legacies. By the fourth paragraph he devised and bequeathed the rest and residue of his estate to his executors, to be disposed of by them as afterwards provided. By the fifth paragraph his executors were directed to convert his real estate into personal, and to divide the whole residue of his estate into seven equal parts, and the testator gave one of such parts to each one of his seven children, and directed his executors to pay to each of his children one-seventh of the income accruing up to the time of the conversion of the real estate. Thus his whole estate was absolutely disposed of. Then follow four further paragraphs as follows :

"*Sixth.* If my said daughter Diademia shall die without leaving her will, all the share and interest remaining hereby given to her shall be equally divided among my other children."

"*Seventh.* If my son Jonathan shall die without having left his will, then I direct my executors, if they shall deem it proper and expedient, that they may give to any child or children of my son Jonathan the whole or any part of the share remaining herein given him; otherwise such remaining share or interest shall be equally divided between my other children.

"*Eighth.* If any of my children, except Diademia, shall die without leaving surviving child or children or heirs of the body, then the share or portion of my estate so given to such deceased child shall go equally to my other children, but in the manner and subject to the like limitations as the specific bequests to each of them as has been hereinbefore provided and given.

"*Ninth.* Any legatee or devisee who shall cause any trouble in law by contesting my will or any portion thereof, or the husband or wife of any of my children who shall make any claim against my

estate, unless a written obligation with my signature thereto, the share or portion of said legatee or devisee who shall contest my will, or the child whose husband or wife shall make charge or claim, except as herein provided, shall receive no portion of my estate, but the share or portion of such shall be equally divided between those agreeable to and who acquiesce in this my will, in the manner of each original respective bequest."

It will be seen that the sixth and seventh paragraphs provide for the contingency of Diademia and Jonathan dying without leaving a will, and that the eighth paragraph provides for the contingency of any of his children, except Diademia, dying without leaving issue. For reasons which, in the testator's mind, were applicable to Diademia and Jonathan, he made the peculiar provisions of the sixth and seventh paragraphs. He did not make any such provisions with respect to his other children. The circumstances detailed in the case indicate why the testator thought proper to try to dispose of whatever unspent part of the bequest to them, they themselves should not by will or otherwise dispose of. Plainly, the death specified in the sixth and seventh paragraphs means a death subsequent to that of the testator. The fact that no such exceptional provisions were made with respect to the whole or the remaining part of the bequests given to the other children, is satisfactory evidence that the testator limited his exceptions to those to whom he applied them, namely, to Diademia and Jonathan.

The eighth paragraph expresses a different contingency, namely, death "without child or children, or heirs of the body." The contingency being different, and the testator refusing to suggest in this paragraph, as he had done in the sixth and seventh paragraphs, that the death he meant was death subsequent to his own, the general rule of construction applies and refers the death here spoken of to death in his own lifetime. Other considerations support this construction. The will converts the real into personal property, and bestows it as personal. The executors are not directed to hold it during the lifetime of the legatees. The testator left his executors at liberty to deliver to each legatee the greater part of his or her share in money. The futility of delivering cash to his legatee, and then trying to tie it up by a sort of entail, we learn from the sixth and seventh paragraphs of his will was present to the testator's

mind. Peculiar circumstances, applicable alone to Diademia and Jonathan, lead him to make provisions in their case to meet a possible contingency, which he probably felt would not occur in the case of any of the other children, or if it should occur would not require his control, and, therefore, he attempted no like ulterior disposition in their cases. If he intended to put any restrictions upon the shares of his other children after they received them, why did he not state them? To name the second object of his bounty, in case death prevents the first named from receiving it, is an obvious caution; but to bestow it absolutely in the first instance upon the first named, and then to cut it down so that the second named shall finally receive it, requires a clear indication of such intention. We do not perceive that the testator anywhere expressed or suggested any such intention.

The seventh paragraph shows that the testator contemplated the probability that his son Jonathan would survive him and take his share; the eighth paragraph shows that the testator also contemplated the possibility that Jonathan might die without issue in the testator's lifetime. Hence, the two alternative ulterior dispositions in his case depended upon one or the other contingency.

The exception of Diademia from the first clause of the eighth paragraph is due, I think, to the testator's tenderness and delicacy of feeling. She was forty years of age, had never married, and had always resided with her parents. The testator distinguished her by the gift of additional bequests. He shrunk from contemplating her death as possible prior to his own, and from reminding her of her single and childless state. He could speak in the sixth paragraph of her remote death as a natural event, but could not speak of it in the eighth paragraph, as he spoke of it in respect of his other children, without doing violence to his feelings and sense of propriety.

The final clause of the eighth paragraph introduces no new rule. Thus, if Abigail had died in the testator's lifetime, the surviving children would have taken one-sixth part upon the same terms as they now take one-seventh part. This clause preserves, as to each legatee, the same rule as to the addition to his or her one-seventh part as exists with respect to the one-seventh. It does not attempt to bestow or impose upon Alanson, Antoinette or Abigail any of the special and peculiar privileges or conditions bestowed or imposed

upon Diademia or Jonathan. The same may be said of the final clause of the ninth paragraph.

I concur in reversing the decree.

LEARNED, P. J. (dissenting):

The rule of construction is clearly stated in *Britton* v. *Thornton* (112 U. S., 526). "When, indeed, a devise is made to one person in fee and 'in case of death' to another in fee, the absurdity of speaking of the one event which is sure to occur to all living as uncertain and contingent, has led the courts to interpret the devise over as referring only to death in the testator's lifetime. But when the death of the first taker is coupled with other circumstances which may or may not ever take place, as, for instance, death under age or without children, the devise over, unless controlled by other provisions of the will, takes effect according to the ordinary and literal meaning of the words, upon death under the circumstances indicated, at any time whether before or after the death of the testator."

And it is well said that this is "the ordinary and literal meaning of the words." No one would probably have any doubt as to what the testator intended. And when he declares that in the event of one child dying without leaving issue surviving, he wishes his property to go to another child, it is difficult to believe that he referred only to a death preceding his own. Testators expect that their children will survive them and they make their wills accordingly.

In *O'Mahoney* v. *Burdett* (L. R., 7 Eng. and Irish App., 388), this subject was very carefully considered in opinions by Lords CAIRNS, HATHERLEY and SELBURNE. They held that a bequest to A, and if she shall die unmarried or without children to B, is an absolute gift to A, defeasible by an executory gift over in the event of A dying at any time unmarried or without children; that this construction can be affected only by a context which renders a different meaning necessary. This is the doctrine of 2 Jarman on Wills (m. p., 688).

This rule is recognized in the opinion in *Vanderzee* v. *Slingerland* (103 N. Y., 54), citing Jarman, and stating that this rule relates to personal property, but giving a different rule in the case of real estate. And the court remarks, in regard to real estate, that the rule "rests more upon authority and precedent than reason, for it is

by no means certain that it was not the intention of the testator to control and provide for the ulterior devolution of the title after it had been enjoyed during life by the primary devisee, in case he then died without issue ; and *such a construction would, it would seem, give effect more completely to the language used.*" That last remark is forcibly true. A testator looks forward to.time and to events after his death. He does not usually contemplate events which may be previous thereto. If he does, he indicates this by specific language. When he says "if any of my children shall die " he speaks of their death after his. If he were thinking of the death of a child prior to his own he would say "if any of my children shall die before me not leaving children." And since the object of courts should be to carry into effect the intention of the testator, they would do this better by following the literal meaning, rather than artificial rules. The will directs the executor to sell the land. Therefore, there is a conversion into personalty, and the rule as to real estate does not apply. All or nearly all the cases cited in opposition to the decree were cases of devises of real estate.

Nor do I see anything in other parts of this will to take it out of the rule laid down in *Britton* v. *Thornton* and *O'Mahoney* v. *Burdett*. On the contrary, item 7 provides for the distribution of Jonathan's share, if he died intestate, among his own children, according to the discretion of the executors. If he died before his father, then he could not make a will which would dispose of his share of his father's estate. Therefore, this provision must have reference to Jonathan's dying intestate after his father's death. In that case the executors were to distribute, in their discretion, his share among his children. Hence Jonathan was not to take an absolute title, and his death mentioned in item 7 was a death at any time. There is no reason to suppose that the testator had any different time in his mind when in item 8 he provided for the contingency (in Jonathan's case as well as in the case of others) of dying " without leaving surviving child or children or heirs of the body." He did not intend in any case that his property should, under the will, pass from his descendants, at least till it had reached his grandchildren.

I think the decree should be affirmed.

Decree reversed and case remitted to surrogate for new hearing, costs of appeal out of estate.