In the Matter of the Final Accounting of DE WITT GARDNER, as Executor of the Last Will and Testament of MARY D. TYLER, Deceased.

FANNIE M. RICE and Another, Appellants; R. FREDERICK TYLER and Others, Respondents.

*Will — power conferred upon the testator's widow to dispose by will of property remaining at her death.*

A will after making a small devise to the testator's son, who was his only heir at law and next of kin, proceeded as follows: " All the rest, residue and remainder of my property and estate both real and personal whether in law or equity of what nature or kind soever, I give, bequeath and devise to my dearly beloved wife Mary Douglas Tyler, to have and to hold the same and every part and parcel thereof to my said wife, her heirs and assigns forever, provided however, that if any of the same shall remain unexpended or undisposed of at the decease of my said wife, what shall so remain, I give, bequeath and devise to my said son Ransom Frederick Tyler, his heirs and assigns, and I expect and desire that my said wife will not dispose of any of said estate by will in such a way that the whole that might remain at her death shall go out of my own family and blood relation. I have already advanced at different times to my said son since he started out for himself or for his benefit, in the aggregate, over $5,000, which is one reason why I do not now see fit to make a more liberal provision for him in this will."

*Held,* that the testator's intention was to clothe his widow with power to dispose of what remained of his estate in her hands at her death, by will, circumscribed by his desire that she should not so dispose thereof that the whole of it should go out of his family and blood relationship.

That a will left by the widow at her death, whereby she disposed of the portion of the testator's estate which remained in her hands, giving a part thereof to the testator's son, was valid and effectual.

APPEAL by Fannie M. Rice and Anna Bunnelle, legatees under the will of Mary D. Tyler, deceased, from a decree of the Surrogate's Court of the county of Oswego, granted on the 2d day of August, 1892, and entered in said surrogate's office on the 23d day of August, 1892, and also from the decree of said court granted and entered on the 22d of June, 1892.

Hon. Ransom H. Tyler, ex-county judge of Oswego county, died at Fulton on the 2d day of November, 1881, leaving a last will and testament bearing date the 19th day of February, 1880, which was admitted to probate on the 1st of December, 1881, and letters testa-

mentary were issued to De Witt Gardner and Mary D. Tyler (his widow), who are named in said will as executors. He left him surviving his widow, Mary D. Tyler, and his son, R. Frederick Tyler, his only heir at law and next of kin. He left three pieces of real estate valued at about $13,000, and personal property amounting to about $8,791.82. The executors took possession of the property; paid his debts and funeral expenses, and on the 11th of September, 1883, paid to his son, Frederick, $500, and took from him a release under seal, of all right, title and interest in and to his estate, bearing date the 11th day of September, 1883.

On the 28th day of June, 1884, Mary D. Tyler (his widow) died in Oswego county, leaving her last will and testament bearing date April 9, 1884, and a codicil thereto bearing date the 28th day of May, 1884; and her will and codicil were admitted to probate on the 5th day of July, 1884, and letters testamentary thereon were issued to De Witt Gardner, Mrs. D. W. Gardner and Mrs. B. J. Dyer, executors named therein. She left her surviving Charles F. Douglas, a brother, her only surviving heir at law and next of kin, she having been the second wife of Tyler and stepmother of his son Frederick. In the testator's will the first clause gave the piece of real estate situated in the village of Oneonta to his son Frederick during his natural life, with power to sell and convey, provided the executors would join in the conveyance. That parcel was conveyed by the testator in his lifetime, and he requested his executors to pay to his son $500 in substitution therefor, which they did as already stated. The testator's will contained the following:

"*Second.* All the rest, residue and remainder of my property and estate both real and personal whether in law or equity of what nature or kind soever, I give, bequeath and devise to my dearly beloved wife Mary Douglas Tyler, to have and to hold the same and every part and parcel thereof to my said wife her heirs and assigns forever, provided however, that if any of the same shall remain unexpended or undisposed of at the decease of my said wife, what shall so remain, I give, bequeath and devise to my said son Ransom Frederick Tyler, his heirs and assigns, and I expect and desire that my said wife will not dispose of any of said estate by will in such a way that the whole that might remain at her death shall go out of my own family and blood relation. I

have already advanced at different times to my said son since he started out for himself or for his benefit, in the aggregate, over $5,000, which is one reason why I do not now see fit to make a more liberal provision for him in this will."

The surrogate found as conclusions of law, viz.:

"*First.* That such and so much of the personal assets and property mentioned in the account of De Witt Gardner, executor of said Mary D. Tyler, deceased, in this proceeding as came from the estate of Ransom H. Tyler, deceased, are not assets, and do not belong to the estate of Mary D. Tyler, deceased, and are not applicable to the payment of the legacies and bequests contained in her will.

"*Second.* That no power or authority was given to Mary D. Tyler by the last will and testament of Ransom H. Tyler, deceased, to dispose by will of any of the property or estate of said Ransom H. Tyler, deceased, remaining at the time of the death of said Mary D. Tyler.

"*Third.* That the only legal effect of the receipt given the executors of Ransom H. Tyler's will by Ransom F. Tyler, of date September 11, 1883, was an acknowledgment by him of the receipt of the verbal bequest of $500, and an acquiescence in the provisions of his father's will, and in no degree did said receipt enlarge, extend or fortify the title of Mrs. Mary D. Tyler to the estate of her deceased husband beyond that given her by his will.

"*Fourth.* That said executor is entitled in this proceeding to be credited with the amount of such personal assets now in his hands which came from and belonged to the estate of Ransom H. Tyler, husband of his testatrix."

At the close of the opinion delivered by the surrogate, he says : "It is clearly apparent that the will of her husband gave this testatrix no power to dispose of any part of his estate by will, and that her will is inoperative as to any of such property which remained undisposed of at the time of her death."

*George T. Clark,* for the appellant Rice.

*Piper & Rice,* for the appellant Bunnelle.

*C. H. David,* for the respondents.

HARDIN, P. J. :

Apparently the intention of the testator was to confide to his wife the power "to have and to hold" his "property and estate, both real and personal," and to give her the power to use the income thereof, as well as the body of the estate ; and foreseeing that she might not use up or consume the whole of the property he provided for two contingencies : *first*, that in the event she did not make a disposition of any of the property that remained at the time of her death, that the same should pass to his son Frederick ; and, *secondly*, he apparently clothed her with power to dispose of what remained of the property at her death by will ; and he circumscribed the execution of that power by a declaration of his expectation and desire to be observed and followed by his wife in the event she exercised the power of disposition of the property ; and in doing so he used the words, " and I expect and desire that my said wife will not dispose of any of said estate by will in such a way that the whole that might remain at her death shall go out of my own family and blood relation." Such interpretation, such declaration of the intention of the testator, seems to be reasonable in the light of the language used by the testator. Such construction gives full force and effect to all the language used in the will, whereas, the construction put thereon by the surrogate seems to be in defiance or disregard of the last clause of the will. When the testator, by the language in the early part of the second clause of the will, had provided liberally for his wife, evidently two ideas came to his mind in respect to his property ; the one being a contingency that his wife might leave at the time of her death unexpended or undisposed of, a portion of his estate, and in that event he provided it to pass to his son ; and his second idea seemed to be that if she should dispose of the same (that is by will) then in providing for the contingency of her disposing of the same by will, he declares to her his expectation and desire that she " will not dispose of any of said estate by will in such a way that the whole that should remain at her death shall go out of my (his) own family and blood relation." Apparently he had great confidence that his wife would carry out his wishes. The clause which we have been considering is followed by a declaration by the testator that he had at different times advanced over $5,000 to his son, and having said that he inserts a clause, viz.,

"which is one reason why I do not now see fit to make a more liberal provision for him in this will." The words "not now see fit to make a more liberal provision for him in this will" are suggestive of the idea that he had reposed confidence in his wife that when she came to dispose of such part of the estate as should remain at her death that she would provide for his son. She seems to have acted upon that expectation and desire and fulfilled to a large extent the confidence reposed in her by her husband, as in the first clause of her will she devises to the son the brick house and lot situated on the corner of Broadway and Third street, and also bequeaths to him his father's gold watch and the family library, "all silver purchased by his father; his father's portrait in oil, dinner, breakfast and tea set of white china, best black walnut chamber set with some bedding," as well as some other articles of furniture. And in the residuary clause of her will she provides that what shall remain after disposing of the specific legacies and devises, that the remainder shall be divided into four equal parts, one of which is given to the son. In view of all the provisions alluded to we are of the opinion that what portion of the testator's estate remained unexpended or otherwise undisposed of at the time of the decease of the wife, passed under the provisions of her will, and that the execution of her will was in pursuance of the expectation and desire expressed to her by the testator, and the authority and power given to her by his will to dispose of such portion of his estate as remained in her hands at the time of her death. (*Terry* v. *Wiggins*, 47 N. Y. 512; *Flanagan* v. *Flanagan*, 8 Abb. N. C. 418; *Greyston* v. *Clark*, 41 Hun, 125; *Wells* v. *Seeley*, 47 id. 109; *Norris* v. *Beyea*, 13 N. Y. (3 Kernan) 273; *Leggett* v. *Firth*, 53 Hun, 152; *Crozier* v. *Bray*, 120 N. Y. 366; *Smith* v. *Van Ostrand*, 64 id. 278; *Rose* v. *Hatch*, 125 id. 433; *Wortman* v. *Robinson*, 44 Hun, 357; *In re Williamson's Estate*, 9 N. Y. Supp. 476; *Colt* v. *Heard*, 10 Hun, 189; *Matter of Blauvelt*, 39 N. Y. St. Repr. 774.) The foregoing views lead to a reversal of the orders appealed from.

MARTIN and MERWIN, JJ., concurred.

Order or decree reversed and proceedings remitted to the Surrogate's Court for further hearing, with a provision that the costs of appellants be paid out of the estate.