Surrogate's Court, Bronx County, March, 1922.          [Vol. 118

real grievance. Probably they have no strong objection against places of amusement having the exclusive right of maintaining illuminated signs on Thirty-fourth street as a guide to patrons in the night time. Their real grievance is that the streets named have been set apart from all other streets of the city as areas within which there shall be no illuminated signs. There is no doubt that advertising by illuminated signs is very beneficial to business. At the same time the multiplication of those outstanding signs in this very busy section of the city easily can become an eyesore, a nuisance and an improper use of the air space over the thoroughfares. We may assume that the board of aldermen before passing this restrictive ordinance gave due consideration to the interests of those theretofore maintaining illuminated signs on Thirty-fourth street and that the ordinance was adopted as the result of its deliberate judgment that the interest, comfort and convenience of the public demanded it. Nor do I regard of any great weight the other ground of objection, to wit, that plaintiffs are unlawfully discriminated against because theatres and places of amusement on Thirty-fourth street are not included within the prohibition. The theatres and other places of amusement that may continue to receive licenses for signs are limited to those having such signs on December 13, 1921. Ordinances of New York City, chap. 23, art. 16, § 215, approved by the mayor December 16, 1921; *Soon Hing* v. *Crowley*, 113 U. S. 703, 708, 709. Furthermore, if the exception in favor of theatres and other places of amusement be deemed unconstitutional it can be separated readily from the constitutional part, leaving in full force the constitutional part. *Duryee* v. *Mayor*, 96 N. Y. 477, 491, 492. It is my opinion that none of the complaints herein states a cause of action. An order may be proposed dismissing each complaint on the merits. The injunctions herein are vacated.

Motion granted.

---

In the Matter of the Application for a Construction of the Last Will and Testament of THOMAS F. BRENNAN, Deceased.

Surrogate's Court, Bronx County, March, 1922.

**Wills — construction — bequest of papers in safe deposit box includes bond therein and the mortgage temporarily removed therefrom — identification of legatee.**

Where a codicil does not in terms revoke the will both instruments must be read together.

A mortgage securing a bond found in testator's safe deposit box was found at his residence where it had been taken for the purpose of having an extension agreement drawn. A memorandum book received in evidence without objection

Misc. 372]　　Surrogate's Court, Bronx County, March, 1922.

contained an entry referring to the bond and mortgage as being in the safe deposit box and denominating them " mortgage papers." *Held*, that under a bequest in the codicil of " all jewelry and papers now at　*　*　*　safety vaults " both the bond and the mortgage passed.

A bequest in the codicil to " sisters of St. Joseph's Hospital, Brook Avenue & 143rd Street," there being no such corporation, will be construed as given to " St. Joseph's Hospital for Consumptives," a corporation which conducts an institution by that name at the place stated, in which the decedent was a patient.

PROCEEDING for construction of will.

*Austin & Austin*, for executor, petitioner.

*Felix A. Muldoon*, for Lucy O'Keefe, respondent.

*Joseph J. Silver*, special guardian for infant parties.

SCHULZ, S. By his will dated June 27, 1918, the decedent created a trust of all of his property, the income of which was to be paid to his mother for her life, then to a sister for her life, and upon her death, the principal was bequeathed and devised absolutely to the children of the sister referred to. Thereafter, and on April 12, 1921, he executed a codicil which in part provided as follows: " All Jewelry & Papers now at Mount Morris safety vaults and all other jewelry or anything else not mentioned I leave to my sister Lucy OKeefe　*　*　*."

It is conceded that the safe deposit box contained some jewelry and some gold coins and there seems to be no dispute between the parties that by the provisions of the codicil these were bequeathed to the sister. But it also contained a bond in the sum of $12,000, and one of the questions to be determined is whether this bond and the mortgage which secured its payment passed under the codicil. This mortgage was not in the box, but at the residence of the decedent, where it is claimed it had been taken some time previous for the purpose of drawing an extension agreement.

There is no clause in the codicil revoking the will, so that the two instruments must be read together (*Westcott* v. *Cady*, 5 Johns. Ch. 334, 343; *Crozier* v. *Bray*, 120 N. Y. 366, 374) and effect given to both, if possible (*Chew* v. *Sheldon*, 214 N. Y. 344, 350; *Hard* v. *Ashley*, 117 id. 606, 613), in order to ascertain what the testamentary intent of the decedent was. The only paper that was found in the box was the bond in question, and if it is held that the word " papers " did not include this document, then that term must be entirely ignored.

A memorandum book was offered in evidence, without objection, which contains an entry referring to the bond and the mortgage which secures its payment as being in the safe deposit box of the decedent and denominating them " mortgage papers." This would

indicate that the decedent used the word ". papers " in connection with documents of this character. It is also urged, and I understand it is not denied, that between the time when the will was drawn and the date of the codicil, the decedent and his mother who had been living together gave up their independent household and went to live with the sister and continued to live with the sister up to the time of the death of the decedent and that the mother is still living with her.

By holding that the provisions of the codicil passed the bond to the sister of the decedent, both the will and that part of the codicil mentioned can be given effect. If it were held that the term " papers " did not include the bond in question which was the only paper in the box, it would be difficult to explain why any effect is given to the word " jewelry." " When the purpose of a testator is reasonably clear by reading his words in their natural and common sense, the courts have not the right to annul or pervert that purpose upon the ground that a consequence of it might not have been thought of or intended by him." *Matter of Tarmargo*, 220 N. Y. 225.

I reach the conclusion that the decedent by the codicil bequeathed the bond mentioned and the bequest of the bond carried the mortgage with it. *Jackson* v. *Blodget*, 5 Cow. 202. It is quite improbable that the testator intended that the debt should be the property of one person and the pledge that of another. *Aymar* v. *Bill*, 5 Johns. Ch. 570; *Jackson* v. *Willard*, 4 Johns. 41; *Merritt* v. *Bartholick*, 36 N. Y. 44.

There is a second question which arises from the following: In the same codicil the decedent made a bequest to " sisters of St. Joseph's Hospital, Brook Avenue & 143rd Street." It is conceded that there is no corporation bearing the name mentioned, but that there is a corporation known as " St. Joseph's Hospital for Consumptives " which conducts an institution by that name at the place stated in which the decedent was a patient. It seems clear to me that the decedent intended by the words he used, to make such bequest to the corporation known as " St. Joseph's Hospital for Consumptives," and I thus construe that portion of the codicil.

Decreed accordingly.